PETER ATHERTON *vs.* PHŒNIX INSURANCE COMPANY.

The testimony of the owner of a vessel, that on a certain day he mortgaged her to a cer tain person for a particular sum, together with a memorandum upon her register of such a mortgage, are competent to prove that there was a mortgage of the vessel, and, in connection with testimony of the sole executor of the mortgagee that on careful search he cannot find the original instrument among his testator's papers, to prove what were its contents.

A mortgage of a vessel for repairs and advances upon her, given without knowledge or consent of her equitable owner, by a person holding the legal title in her, and taken in good faith by the mortgagee, without notice of any limitation of the mortgagor's right. and authority, will avoid a policy of insurance on her, held by the equitable owner, and stipulated to be void in case it, or the interest insured by it, should be sold, assigned, transferred or pledged without previous consent of the insurers.

CONTRACT upon a policy of insurance made December 18, 1865, to Amos H. Howard " on account of whom it concerns," and by him assigned with consent of the insurers to the plaintiff May 15, 1866, upon the ship Northland, for a voyage from England to the East Indies, containing this clause : " It is agreed that this insurance shall be void in case this policy, or the interest insured thereby, shall be sold, assigned, transferred or pledged without the previous consent in writing of the insurers."

Trial before *Wells*, J., who, with the consent of the parties, withdrew the case from the jury and reported it for the decision of the full court upon the question, among others, " whether there was such a transfer or pledge of the property insured as to avoid the policy or defeat the suit, there being no controversy upon the evidence reported on that point except as to its compe· tency and sufficiency." The substance of the report relating to this issue appears in the opinion.

*H. W. Paine & F. Goodwin,* for the plaintiff.

*J. C. Dodge,* for the defendants.

AMES, J. At the date of this policy, the legal title to the vessel stood in the name of John W. Ford, of the city of London in England, to whom it had been conveyed by the American owners on December 17, 1863. The case finds that he was not, in the ordinary sense of the word, a purchaser of the vessel, and that he did not hold adversely to the former American owners,

but that she was conveyed to him that she might have a British register, and sail under the British flag, in order to avoid the risk of capture by Confederate cruisers. She was accordingly registered in London in his name, and, so far as the public records showed, he was the only legal owner. He testified, in substance, that the equitable ownership remained in the parties who owned her at the time of the transfer, and that he held her under that transfer in trust for the former owners. We do not understand however that this trust was reduced to writing, or that there was anything on record to manifest its existence.

Such being the state of things as to the ownership of the vessel, it appears that Charles Gumm, also of London, and now deceased, paid for repairs upon her, and made advances to the American, or equitable owners, to a large amount. No question is raised as to the *bona fides* of these charges, and it is not denied that they were on account of the ship, and were beneficial and useful, in their nature, to the ship and her owners, whoever they might be. From the nature of Ford's title, he would not be likely to incur these charges upon his own personal credit, and the language of the witness imports that they were charges against the ship, and that " the ship " had got largely into Charles Gumm's debt for repairs and advances. Ford also testified that for the purpose of securing these advances he undertook to mortgage the ship to the creditor.

Two questions then arise : 1st. Is it proved by competent evidence that there was such a mortgage ? 2d. If so, what was its effect upon the policy of insurance which had been taken a few months previously, and which contained the stipulation " that this insurance shall be void, in case this policy, or the interest insured thereby, shall be sold, assigned, transferred or pledged without the previous consent in writing of the insurers ? "

The first of these questions hardly admits of serious controversy. Ford, the holder of the legal title, testifies that he made such a mortgage, giving the date, the amount of the debt, the name of the mortgagee, and the description of the property mortgaged. The mortgagee being dead, his sole acting executor testified that he has made diligent and careful search among all the

papers of the deceased in his control, and cannot find this instrument. The certified copy of the register shows that a mortgage of the ship, on the same date, by the same mortgagor, for the same amount, and to the same person, was duly and seasonably recorded. It is plainly a case in which secondary evidence was admissible; and the secondary evidence produced, although no exact copy could be furnished from the registry, was sufficient to prove that the lost paper had existed, and that its contents were such as had been described. *Goodrich* v. *Weston,* 102 Mass. 362.

Upon the remaining question, as to the effect of this mortgage there is no direct evidence of any express authority given in terms to Ford, by the equitable owners, to make such a mortgage, and it appears affirmatively that he did it without consulting or notifying them. It is not distinctly stated who ordered the repairs, or requested the advances, but it is not to be supposed, and has not been argued, that Gumm was a mere volunteer, and parted with so large a sum without request or authority from some one whom he at least supposed to represent the vessel and her owners. It may well be inferred that, in that state of things, the creditor, Gumm, could have arrested the vessel by an attachment, or perhaps by a libel in admiralty, and in that way have prevented her from going to sea at all, and so have broken up the intended voyage, unless security should first be given in some form for the debt. It is intimated in the argument, that the mortgage was a wrongful and fraudulent act on the part of Ford; but we see no ground for such an imputation. The report discloses nothing from which it can be inferred that there was any misapplication of funds, or that Ford had any interest in the claim, or that the mortgage could be of any advantage to him personally in any event. The report expressly says that it was a charge against the ship and was in no sense his debt. It certainly was not unreasonable that the ship should be held in some form as security for the debt. The parties whom the plaintiff represents had had the benefit of the repairs and advances. They owed the money, and had no right to complain that it was made a charge upon the property. They had it in their power at any time to extinguish the mortgage, by paying what they

were bound to pay. It may have been, and perhaps we ought to assume that it was in fact, necessary to give the mortgage in order to leave the ship at liberty to go upon her voyage. He was the only person who could give it, and to all appearance it was a reasonable, honest and proper thing to do. The absolute title was intrusted in his hands, and he had apparently full authority to make such a conveyance. Even if Gumm, the creditor, knew that he was in fact a mere trustee for other parties, the facts stated in the report furnished him no indication, nor even any ground of suspicion, that Ford, in mortgaging the ship as security for repairs and advances on her account, was exceeding his authority as such trustee.

The creditor, Gumm, appears to have received the mortgage in entire good faith, from a person having the legal title, and without notice, express or implied, that the making and delivery of it was an act outside of the authority and right of that person. If Ford was an agent or mere trustee, he was nevertheless clothed with all the apparent muniments of an absolute title to the property in himself. If he exceeded his authority, the loss should fall upon the party who misled the other by intrusting what appeared to be full powers in the hands of the agent, and not upon the party who was misled by such appearance. Story on Agency, § 443. If, instead of being lost, the vessel had returned to the port of London, we do not see on what grounds the right of the mortgagee to hold under the mortgage could have been successfully resisted by the plaintiff and his associates.

Our conclusion therefore must be, that the mortgage was binding and valid against the plaintiff and the parties whom he represents. The question is not whether there still remained an insurable interest in the assured. The rights of the parties depend upon the express terms of the contract, and there can be no doubt, upon the authorities, that such a conveyance must have the effect to render such a policy of no avail to the plaintiff. *Edmands* v. *Mutual Safety Insurance Co.* 1 Allen, 311. *Lawrence* v. *Holyoke Insurance Co.* 11 Allen, 387. *Clark* v. *New England Insurance Co.* 6 Cush. 342.

As this point is necessarily fatal to the plaintiff, we have not thought it necessary to consider the other questions submitted in the reservation.     *Judgment for the defendants.*